## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

WILLIAM SHAW, JR.                                                                                       PLAINTIFF

V.                                               No. 3:21-CV-7-JTR

KILOLO KIJAKAZI, Commissioner
Social Security Administration[1]                                                            DEFENDANT

## ORDER

### I. Introduction

Plaintiff William Shaw, Jr. applied for disability benefits, alleging disability beginning on January 16, 2017. (Tr. at 15). He later amended his alleged onset date to January 31, 2017. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application on July 13, 2020. (Tr. at 27). The Appeals Council denied Shaw's request for review (Tr. at 1), making the ALJ's denial of Shaw's application for benefits the final decision of the Commissioner.

Shaw filed this case seeking judicial review of the decision denying him benefits. For the reasons stated below, the Court[2] affirms the ALJ's decision.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 4*.

## II. The Commissioner's Decision

The ALJ found that Shaw had not engaged in substantial gainful activity since his alleged onset date of January 31, 2017, the amended alleged onset date. (Tr. at 17). At Step Two of the five-step analysis,[3] the ALJ found that Shaw had the following severe impairments: degenerative disc disease of the spine, Rocky Mountain spotted fever, fatigue, joint pain due to right knee osteoarthritis, left shoulder tendinitis, diabetes mellitus, hypertension, coronary artery disease arrhythmia, irregular heartbeat, obesity, and asthma. (Tr. at 18).

After finding that Shaw's impairments did not meet or equal a listed impairment, the ALJ determined that Shaw had the ability to perform work at the light exertional level, except that: (1) he could perform occasional postural activities of climbing, stooping, balancing, crouching, kneeling, and crawling; (2) he could perform frequent reaching and handling; (3) he could not operate foot controls or pedals with the right knee and leg or perform commercial driving or forklift driving; (4) he had pulmonary limitations including no heavy chemicals, heavy dusts, heavy humidity, or heavy fumes, and he required inside climate control; and (5) he could

---

[3] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)–(g).

not perform overhead reaching with his non-dominant left upper extremity, but could occasionally reach overhead with his dominant right upper extremity. (Tr. at 20).

Relying upon Vocational Expert ("VE") testimony, the ALJ determined that Shaw was capable of performing his past relevant work as a chief jailer, as the job is generally performed. (Tr. at 25). The ALJ also found that, based on Shaw's age, education, work experience, and residual functional capacity ("RFC"), other jobs existed in significant numbers in the national economy that he could perform, including positions as food and beverage order clerk and call out operator. (Tr. at 26). Thus, the ALJ concluded that Shaw was not disabled. (Tr. at 27).

### III.  Discussion

A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however,

"merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Shaw's Arguments on Appeal

Shaw contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the ALJ erred by: (1) improperly evaluating two medical opinions from his treating providers; (2) failing to explain the decision to discount Shaw's credibility; and (3) failing to resolve an apparent conflict between the VE's hearing testimony and the *Dictionary of Occupational Titles* ("DOT")

regarding the overhead reaching limitations in his RFC. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

First, Shaw challenges the ALJ's treatment of the medical opinion evidence. For claims that are filed on or after March 27, 2017, as is the case here, the ALJ evaluates medical opinions in accordance with 20 C.F.R. § 404.1520c, which advises that the ALJ need not defer or assign any specific evidentiary weight to any medical opinions in the record. Instead, the ALJ determines the persuasiveness of an opinion after considering several factors listed in the regulation, with emphasis on the factors of supportability and consistency.[4] 20 C.F.R. § 404.1520c(a).

Shaw argues that the ALJ erred in discounting two medical opinions submitted by Dr. Travis Richardson, his orthopedist, and Dr. Barry Hendrix, his family physician. Dr. Richardson opined that Shaw could lift and carry 10 pounds; could stand and walk for three hours in a workday and sit for three hours in a workday; would require time to elevate his feet, frequent rest periods, longer than normal breaks, and the opportunity to shift at will from sitting or standing/walking; could frequently reach in all directions, finger, and handle; must avoid moderate

---

[4] With regard to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As for consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § (c)(2).

exposure to cold, heat, humidity, chemicals, fumes, odors, dust, and gas; and could not push, pull, bend, stoop, carry heavy loads, or walk long distances. Dr. Richardson also opined that Shaw's impairments would cause him to miss more than three days of work per month. (Tr. at 1115–17). The objective medical evidence that Dr. Richardson cited in support of his opinion was Shaw's low back pain, lower extremity radiculopathy, bilateral leg weakness, and bilateral leg pain.

The ALJ found Dr. Richardson's opinion partially persuasive and agreed that Shaw's reasonable residual limitations secondary to multiple knee surgeries as well as his back impairments supported an RFC limited to sedentary work.[5] The ALJ also included environmental restrictions in the RFC to limit Shaw's exposure to heat, cold, chemicals, dusts, humidity, and fumes. The ALJ found that the rest of Dr. Richardson's opinion, however, was not consistent with multiple regular findings of full intact 5/5 muscle strength, no loss of sensation or motor strength, full range of motions, negative straight leg raise testing, and unremarkable gait. The ALJ also rejected Dr. Richardson's opinion that Shaw would miss three days of work per month as too restrictive because it was unsupported by other evidence in the record,

---

[5] The regulations define sedentary work as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Sedentary jobs should generally require no more than two hours of standing or walking in an 8-hour workday, while sitting should generally total approximately six hours of an 8-hour workday. Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5.

including Shaw's own description of his daily activities, such as caring for his 18-month-old grandchild, caring for chickens, preparing meals, driving, shopping, and doing laundry. (Tr. at 61–64, 80, 290–96). These were legitimate reasons to discount the opinion. *See Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022) (ALJ must give good reasons to explain the weight given to a treating physician's opinion).

The ALJ rejected Dr. Hendrix's opinion as unpersuasive for the same reasons. Dr. Hendrix opined that Shaw could lift and carry less than 10 pounds, stand and walk for less than two hours, and sit for two hours. He found that Shaw would be unable to reach in all directions, could occasionally finger and handle, and would require frequent rest periods, longer than normal breaks, and a sit, stand, or walk option. Dr. Hendrix also opined that Shaw would miss more than three days of work per month secondary to his impairments. (Tr. at 1110–12). The ALJ found that the manipulative limitations assessed by Dr. Hendrix were more persuasive in light of Shaw's multiple shoulder surgeries, and he included manipulative limitations in Shaw's RFC. But the ALJ found the absentee restriction to be inconsistent with many normal findings in the record, including a recent neurosurgery examination showing independent ambulation, intact strength, no focal numbness, only mild tenderness to the lumbar spine, and imaging showing only mild stenosis at L4-5 with mild neuroforaminal narrowing. The ALJ was entitled to reject the opinion on this basis. *See Miller*, 784 F.3d at 478 (ALJ could discount treating source's opinion that

was not well-supported by objective medical evidence and was inconsistent with other evidence in record).

Contrary to Shaw's assertions, the ALJ did not fail to discuss the supportability of these opinions. The ALJ found that certain portions of Dr. Hendrix's opinion were supported by the shoulder surgeries he cited. (Tr. at 25). The ALJ also agreed that the back impairment that Dr. Richardson cited supported the portions of his opinion that were consistent with a sedentary work limitation. (Tr. at 24). In rejecting these opinions, the ALJ specifically stated that the absentee limitation was unsupported by the evidence. *Id*. The physicians provided little to no supporting explanation for their opinions, so to the degree that the ALJ may have erred in this regard, the Court will attribute it to a mere "deficiency in opinion-writing" that did not affect the outcome of the case nor frustrate the Court's ability to conduct an appropriate judicial review. *See Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021). In sum, the ALJ evaluated these medical opinions in accordance with proper legal standards and the Court finds no error in his decision to afford them little weight.

Shaw also argues that the ALJ's credibility analysis was inadequate. When evaluating a claimant's credibility with regard to his subjective complaints, an ALJ must consider the *Polaski* factors, which include "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and

side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (quotation omitted) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). The ALJ may also consider the absence of objective medical evidence supporting the claimant's subjective complaints, though the ALJ cannot discount a claimant's credibility based on this consideration alone. *Id*. at 932. "The ALJ is not required to discuss each *Polaski* factor as long as he acknowledges and considers the factors before discounting a claimant's subjective complaints." *Id*. (quotation omitted). An ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole," and the Court defers to the ALJ's credibility determination "as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

Here, the ALJ specifically acknowledged and considered the *Polaski* factors. (Tr. at 23). He explicitly found that Shaw's statements concerning his symptoms were inconsistent with the medical evidence and other evidence in the record. (Tr. at 21). For example, the ALJ found that, despite his allegations of disabling pain, Shaw performed a "wide range of daily activities" that included the capacity to care for his infant granddaughter, who weighed about 24 pounds. (Tr. at 24). Indeed, Shaw wrote in a Function Report that he had no problems with personal care, prepared his own meals, did laundry daily, washed dishes, mowed the lawn on a

9

riding mower, drove a car, shopped for groceries up to an hour at a time, and could lift 20 pounds—an ability that exceeds the demands of the sedentary jobs the ALJ found Shaw could perform. (Tr. at 290–96).

The ALJ also noted that Shaw was doing well following his left shoulder surgeries, and although he could not lift more than five pounds overhead, he had good range of motion and minimal pain aided by physical therapy and pain medications. (Tr. at 21, 738–41). He also reported in March 2020 that pain medication was controlling his back pain and radiculopathy reasonably well. (Tr. at 22, 1275). Pain that can be controlled by medication is not considered disabling. *Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011).

In May 2020, Shaw was diagnosed with lumbar spondylosis, sacroiliac joint pain, and mild stenosis at L4-5 with mild neuroforaminal narrowing. (Tr. at 1291). The ALJ emphasized that only conservative treatment measures were indicated. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (conservative treatment plan may undermine claim of severe disabling condition). Following two knee surgeries, Shaw continued to complain of localized right knee pain, but was doing okay with walking. (Tr. at 23, 1288). *See Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996) (noting that "the mere fact that working may cause pain or discomfort does not mandate a finding of disability").

The ALJ's analysis was properly guided by these considerations. *See Schmitt*, 27 F.4th at 1361. Considering the deference owed to the ALJ's credibility finding, the Court concludes that the ALJ's decision to discount Shaw's subjective complaints was supported by good reasons and substantial evidence.

Shaw's final argument concerns an apparent conflict between the VE's testimony and the DOT that, he argues, undermines the ALJ's conclusions at Step Four and Five of the evaluation process. Before an ALJ can rely on a VE's testimony as substantial evidence, the ALJ must affirmatively ask the VE about any possible conflicts between the testimony and the information contained in the DOT. *Moore v. Colvin*, 769 F.3d 987, 989 (8th Cir. 2014). If there are any apparent conflicts, the VE must "offer an explanation for any inconsistencies between [his or her] testimony and the DOT, which the ALJ may accept as reasonable after evaluation." *Id*. at 990. Absent adequate rebuttal, the ALJ cannot rely on VE testimony that conflicts with the DOT to support a conclusion that the claimant is not disabled. *Id*.

In this case, Shaw's RFC prevents him from reaching overhead with his left arm and allows him to only occasionally reach overhead with his right, dominant hand. (Tr. at 20). The VE testified that an individual with these limitations could perform Shaw's past relevant work as a chief jailer, as well as other jobs in the national economy such as food and beverage order clerk and call out operator. (Tr. at 89–92). These jobs, however, all require frequent or occasional reaching, and the

11

DOT does not specify the direction of reaching required to perform these occupations. *See Moore*, 769 F.3d at 989. Although the ALJ properly recognized this apparent conflict and inquired about it at the hearing, Shaw argues the VE's response was insufficient.

The Court disagrees. The VE's testimony was far more descriptive in this instance than in prior cases where a VE's rebuttal was deficient and required remand.[6] For example, regarding the chief jailer position, the VE opined:

> As you know, the DOT does not refer to overhead reaching, and that would be something that would be based upon my analysis, education, and observation with those particular job evaluations. So as chief jailer, in that position, I wouldn't see that as something that he would have to do even occasional overhead type reaching or anything in regards to that. The way it's described in the DOT is much more of a sit-down position. And as [Shaw] did describe it, he would have to do some interactions with the prisoners, but that would be limited – limited with the way it's described in the DOT.

(Tr. at 89). The VE did not, as Shaw contends, solely rely on the DOT description of the job position to support her testimony. It appears to the Court that the VE's focus on the DOT description was meant to distinguish between the chief jailer position as it is generally performed (i.e., how it is described in the DOT as being performed), and the chief jailer position as it was actually performed by Shaw.

---

[6] *See, e.g.*, *Stanton v. Comm'r*, 899 F.3d 555, 560 (8th Cir. 2018) (VE statement that his opinion was "consistent with the DOT and his experience" held insufficient); *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) (ALJ failed to recognize a possible conflict existed and thus sought no explanation from the expert); *Belmudes v. Comm'r*, No. 4:20-CV-00445, 2021 WL 1581451, at *4 (E.D. Ark. Apr. 22, 2021) (VE testimony not sufficient if VE simply cites to his or her experience without further explanation).

The VE also stated that the call out operator position "refers to frequent talking and heading only as part of the job, and I do know that the DOT does not refer to overhead reaching, but, in this particular occasion, it seems as though it would not have to be something that would be relevant or needed to perform the job." (Tr. at 91). The VE continued: "And the food and beverage order clerk as well, with the frequency that it requires—none of it would require overhead reaching. That, basically, would be a job where he would be taking orders over the phone to get orders out to individuals in a hotel or restaurant or something of that nature. So in both cases, the overhead reaching would not be of issue." (Tr. at 91–92).

In sum, the VE's testimony expressed her professional judgment based on her analysis, education, and observations of these or similar jobs. She described what the job positions would generally entail and explained why they would not require overhead reaching to a degree exceeding Shaw's RFC. The ALJ was thus entitled to rely on the VE's testimony to support his decision. *See Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (in crediting VE testimony over a DOT listing, ALJ may rely on information about a particular job's requirements based on VE's experience). The Court finds no error in the ALJ's resolution of the apparent conflict.

### IV.  Conclusion

For the reasons stated above, the Court concludes that the ALJ applied proper legal standards and that substantial evidence on the record as a whole supports the

ALJ's decision. The finding that Shaw was not disabled within the meaning of the Social Security Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 6th day of June, 2022.

_____
UNITED STATES MAGISTRATE JUDGE